Approved:  *Courtney Heavey*
           ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
           JEFFREY C. COFFMAN/COURTNEY HEAVEY
           Assistant United States Attorneys

Before:   THE HONORABLE PAUL E. DAVISON          21-mj-09734
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA              :      **SEALED COMPLAINT**

        - v. -                        :      Violations of 18 U.S.C.
                                             §§ 1028A, 1343, 1349, and
                                      :      2
JACOB CARTER,
QUADRI SALAHUDDIN,                    :
ANWAR SALAHUDDIN, and                        COUNTY OF OFFENSES:
CHRISTAL RANSOM                       :      WESTCHESTER

                Defendants.           :

- - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

        Lawrence Lonergan, being duly sworn, deposes and says
that he is a Special Agent with the Federal Bureau of Investigation
("FBI"), and charges as follows:

## COUNT ONE
### (Conspiracy to Commit Wire Fraud)

        1.   From at least in or about March 2020, up to and including
at least in or about July 2020, in the Southern District of New
York and elsewhere, JACOB CARTER, QUADRI SALAHUDDIN, ANWAR
SALAHUDDIN and CHRISTAL RANSOM, the defendants, and others known
and unknown, willfully and knowingly did combine, conspire,
confederate, and agree together and with each other, and with
others known and unknown, to commit wire fraud, in violation of
Title 18, United States Code, Section 1343.

        2.   It was a part and object of the conspiracy that JACOB
CARTER, QUADRI SALAHUDDIN, ANWAR SALAHUDDIN and CHRISTAL RANSOM
the defendants, and others known and unknown, knowingly and with
the intent to defraud, having devised and intending to devise a
scheme and artifice to defraud, and for obtaining money and
property by means of false and fraudulent pretenses,
representations, and promises, would and did transmit and cause to

be transmitted by means of wire, radio, and television communication in interstate and foreign commerce writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, CARTER, QUADRI SALAHUDDIN, ANWAR SALAHUDDIN and RANSOM agreed to obtain funds from the U.S. Small Business Administration ("SBA") through the SBA's Economic Injury Disaster Loan ("EIDL") Program, by means of false and fraudulent pretenses, representations, and documents, including through electronic communications transmitted into and out of the Southern District of New York.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
### (Wire Fraud)

3.    From at least in or about March 2020, up to and including at least in or about July 2020, in the Southern District of New York and elsewhere, JACOB CARTER, QUADRI SALAHUDDIN, ANWAR SALAHUDDIN and CHRISTAL RANSOM, the defendants, knowingly and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, CARTER, QUADRI SALAHUDDIN, ANWAR SALAHUDDIN and RANSOM engaged in a scheme to obtain funds from the SBA through the SBA's EIDL Program, by means of false and fraudulent pretenses, representations, and documents, including through electronic communications transmitted into and out of the Southern District of New York.

(Title 18, United States Code, Section 1343 and 2.)

## COUNT THREE
### (Aggravated Identity Theft)

4.    From at least in or about March 2020, up to and including at least in or about July 2020, in the Southern District of New York and elsewhere, JACOB CARTER, QUADRI SALAHUDDIN, ANWAR SALAHUDDIN and CHRISTAL RANSOM, the defendants, knowingly did transfer, possess, and use, and cause to be transferred, possessed, and used, without lawful authority, a means of identification of

another person, during and in relation to a felony violation
enumerated in Title 18, United States Code, Section 1028A(c), to
wit, CARTER, QUADRI SALAHUDDIN, ANWAR SALAHUDDIN and RANSOM
possessed and used the names and identities of applicants in
connection with the submission of fraudulent EIDL applications to
the SBA during and in relation to the conspiracy and wire fraud
charges in Counts One and Two of this Complaint.

(Title 18, United States Code, Sections 1028A(a)(1) and 2(a).)

       The bases for my knowledge and for the foregoing charges
are, in part, as follows:

    5.   I am a Special Agent with the FBI.  I have been a Special
Agent with the FBI for over 11 years.  I am currently assigned to
the White-Collar Squad in the Westchester Resident Agency.  During
the course of my career, I have participated in numerous criminal
investigations, including investigations involving mail and wire
fraud and aggravated identity theft.  I am a case agent assigned
to the current investigation.  In the course of my career, I have
been the affiant on numerous complaints and search warrants.

    6.   I have been personally involved in the investigation of
this matter.  This affidavit is based upon my personal
participation in the investigation of this matter, my
conversations with other law enforcement officers, and my
examination of reports and records.  Because this affidavit is
being submitted for the limited purpose of establishing probable
cause, it does not include all the facts that I have learned during
the course of my participation in the investigation.  Where the
contents of documents and the actions, statements and
conversations of others are reported herein, they are reported in
substance and in part, except where otherwise indicated.

### Overview of the Fraudulent Conduct

    7.   From at least on or about March 30, 2020, up to and
including at least on or about July 16, 2020, JACOB CARTER, QUADRI
SALAHUDDIN, ANWAR SALAHUDDIN, and CHRISTAL RANSOM, the defendants,
collected personal information from over 1,000 individuals (the
"Applicants"), specifically, their: name, email, telephone
number, address, banking information, social security number, and
date of birth.  ANWAR SALAHUDDIN referred to this list of specific
information, as "the format," and it did not solicit any
information about the individuals owning businesses or employing
people.

8.   JACOB CARTER, QUADRI SALAHUDDIN, ANWAR SALAHUDDIN, and CHRISTAL RANSOM, the defendants, then used the Applicants' personal information to submit or cause to be submitted over 1,000 applications to the SBA, seeking grants under the SBA's EIDL Program (the "EIDL Applications"). In the EIDL Applications, the defendants represented and caused to be represented that the Applicants owned businesses with ten or more employees and with specified revenue. As described below, very few of the Applicants law enforcement spoke with claimed that they owned a business, and none claimed to own a business with the name, address, number of employees, and revenue stated in their EIDL Application.

9.   The EIDL Applications had numerous similarities, with almost all claiming: that the business's name was an individual's name, that the business was a sole proprietorship, that the business employed between 10 to 15 employees, and the businesses income and expenses were reported in round numbers – *i.e.*, $67,000. In addition, more than 75% of the applications claimed that the business was involved in the agricultural sector.

10.   In the beginning, JACOB CARTER, QUADRI SALAHUDDIN and ANWAR SALAHUDDIN, the defendants, collected personal information from Applicants, and CARTER prepared the fraudulent EIDL Applications. Once an applicant received the $10,000 grant from the SBA, CARTER, QUADRI SALAHUDDIN, and ANWAR SALAHUDDIN collected kickbacks from the Applicants, and split it amongst themselves.

11.   Over time, QUADRI SALAHUDDIN and ANWAR SALAHUDDIN, the defendants, began directly submitting fraudulent EIDL Applications using the personal information they collected, but continued sharing a portion of the Applicants' kickbacks with JACOB CARTER, the defendant.

12.   To further expand the scope of their fraudulent scheme, JACOB CARTER, QUADRI SALAHUDDIN, and ANWAR SALAHUDDIN, the defendants, also used "runners," including CHRISTAL RANSOM, the defendant. RANSOM collected personal information from at least 63 people, and gave that information to QUADRI SALAHUDDIN for the purpose of having him submit fraudulent EIDL applications or pass the information to CARTER, to submit the fraudulent EIDL applications. Once an Applicant received the $10,000 grant, RANSOM collected money from the Applicant, generally $5,000, a portion of which she kept for herself and a portion of which she gave to QUADRI SALAHUDDIN, who in turn shared it with ANWAR SALAHUDDIN and CARTER.

13.   Altogether, JACOB CARTER, QUADRI SALAHUDDIN, ANWAR SALAHUDDIN, and CHRISTAL RANSOM, the defendants, attempted to

obtain $10 million from the SBA in connection with the fraudulent EIDL applications and the SBA paid out over $7.6 million in connection with the fraudulent EIDL Applications.

### Background on the SBA's EIDL Program

14. Based on my training and experience, review of information from the SBA's website at: https://www.sba.gov/funding-programs/loans/coronavirus-relief-options/economic-injury-disaster-loans, and review of information received from the SBA, I know that:

a. The SBA is a federal agency of the Executive Branch that administers assistance to American small businesses. This assistance includes making direct loans to applicants through the EIDL Program.

b. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted on March 29, 2020, designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. Among other things, the CARES Act expanded the SBA's EIDL Program, which provided small businesses with low-interest loans of up to $2 million prior to in or about May 2020 and up to $150,000 beginning in or about May 2020, in order to provide vital economic support to help overcome the loss of revenue small businesses are experiencing due to COVID-19. To qualify for an EIDL under the CARES Act, an applicant must have suffered "substantial economic injury" from COVID-19, based on a company's actual economic injury determined by the SBA. EIDLs may be used for payroll and other costs as well as to cover increased costs due to supply chain interruption, to pay obligations that cannot be met due to revenue loss, and for other similar uses.

15. The CARES Act also permitted applicants seeking a loan under the EIDL program to request and receive an advance of approximately $1,000 per employee, for an amount up to $10,000, which the SBA has generally provided while the loan application was pending. The advance was effectively a grant, as applicants were not required to repay any of the advanced amount. In many cases, the SBA provided advances in connection with applications that the SBA later determined were ineligible for a loan.

16. To qualify for an EIDL, applicants are required to submit applications to the SBA, generally through the SBA's website, wherein the applicant provides information including the business's: name, EIN (or social security number for sole proprietorships), gross revenues and cost of goods for the prior

year, address, email, date of establishment, number of employees as of January 31, 2020, and bank account information. The EIDL application also states that "If anyone assisted you in completing this application, whether you pay a fee for this service or not, that person must enter their information below," and includes fields for the name and contact information of anyone assisting the applicant to complete the application. Applicants are required to certify under penalty of perjury that the information provided in the EIDL application is true and correct.

### The EIDL Applications

17. Based on records from the SBA and Charter Communications, I know the following:

a. From on or about May 12, 2020, through on or about July 9, 2020, Internet Protocol ("IP")[1] addresses registered to a family member of JACOB CARTER's fiancée at Mount Vernon Residence-1 in Mount Vernon, New York, JACOB CARTER's fiancée at a residence in Capitol Heights, Maryland, and JACOB CARTER's relative at a residence in Suitland, Maryland (the "CARTER IP Addresses"), were used to submit approximately 425 EIDL applications to the SBA. All of these applications reported that the businesses had 10 to 14 employees as of January 2020.

b. From on or about June 9, 2020, through on or about July 9, 2020, IP addresses registered to ANWAR SALAHUDDIN at Mount Vernon Residence-2 in Mount Vernon, New York (the "ANWAR SALAHUDDIN IP Addresses"), were used to submit approximately 358 EIDL applications to the SBA. All of these applications reported that the businesses had 10 to 15 employees as of January 2020.

18. Based on information from the SBA, I know that the SBA received EIDL applications in the names of ANWAR SALAHUDDIN and QUADRI SALAHUDDIN, the defendants, which listed their addresses as addresses in Mount Vernon, New York.

19. On or about May 7, 2021, Magistrate Judge Judith C. McCarthy signed a warrant authorizing the search of iCloud accounts registered to JACOB CARTER, (the "CARTER iCloud Account"), CHRISTAL RANSOM, (the "RANSOM iCloud Account") and QUADRI SALAHUDDIN, (the "QUADRI iCloud Account"), the defendants.

---

[1] An IP address is a unique address that identifies a device on the Internet or a local network.

20.   Based on my review of the CARTER iCloud Account, I know that:

a.   The CARTER iCloud Account had approximately 205 screenshots of personal identifiable information for approximately 229 individuals.

b.   The CARTER iCloud Account contained screenshots of confirmations from the SBA for approximately 413 of the 425 SBA EIDL applications submitted from the CARTER IP Addresses.

c.   The CARTER iCloud Account further contained an additional 256 screenshots of confirmations from the SBA for EIDL applications that were not submitted from the CARTER IP Addresses or ANWAR SALAHUDDIN IP Addresses.

21.   Based on information from the SBA, I know that all but 5 of the 256 EIDL applications that corresponded to the screenshots found in the CARTER iCloud Account, reported that the businesses had 10 to 15 employees as of January 2020.

22.   Based on information from the SBA, I know that:

a.   disbursements of SBA's EIDL advances were transmitted by the Financial management System to the Treasury, which has its primary server in Virginia.

b.   EIDL applicants submitted from the CARTER IP Addresses and ANWAR SALAHUDDIN IP Addresses, included applicants with listed addresses in the Southern District of New York, as well as across numerous states, including California, Nevada, Ohio, Florida, and Georgia.

23.   Although, as set forth in Paragraph 16, a question on the EIDL applications states that the name or contact information of anyone assisting the applicants in completing the applications is required, none of the EIDL applications referred to in Paragraphs 17 or 20 included such information.

24.   I and other Special Agents of the FBI have interviewed approximately 50 of the Applicants in connection with the Applications. Based upon my personal participation in interviews, and my conversations with and review of reports of other law enforcement officers who interviewed Applicants, I am aware that Applicants reported, in sum and substance, among other things, the following:

a.   The vast majority of Applicants admitted to providing personal identifiers (e.g., name, date of birth and social security number), home address, contact information, bank account information, email address, and bank account number to another person for the purpose of having that person or his/her associates apply on the Applicant's behalf for a loan and/or grant. Although the EIDL applications submitted to the SBA on behalf of all of these Applicants reflected that they owned a business with more than 10 employees, which had been opened on a specified date and had specified revenue during the 12 months prior to the pandemic, zero reported actually owning a business with the opening date, number of employees, and income reflected on their EIDL application.

b.   The vast majority of these Applicants admitted that they were required to pay the persons who submitted the application and/or that person's associates a portion of the $10,000 they received from the SBA, generally approximately $3,000 to $5,000.

25.   Based on information from a credit reporting agency, I know that ANWAR SALAHUDDIN and QUADRI SALAHUDDIN, the defendants, reside in Mount Vernon, New York and did so during the timeframe of the fraudulent scheme described herein.

## The Defendants' Phone Numbers

26.   Based on records obtained from AT&T and Sprint/T-Mobile, I am aware of the following:

a.   JACOB CARTER, the defendant, is the subscriber of a cellphone with a telephone number ending in 7702 (the "CARTER Cellphone").

b.   CHRISTAL RANSOM, the defendant, is the subscriber of a cellphone with a telephone number ending in 7750 (the "RANSOM Cellphone").

c.   Another individual with the last name SALAHUDDIN is the subscriber of a cellphone with a telephone number ending in 4835 (the "QUADRI Cellphone-1"). I believe that QUADRI SALAHUDDIN, the defendant, was using the QUADRI Cellphone-1 because:

i.   Based on information from Apple, I know that the QUADRI iCloud Account lists the QUADRI Cellphone-1 as the day phone and FaceTime/iMessage phone contact for the account.

ii.   Based on information from Apple for the RANSOM iCloud Account, as described below, I know that the RANSOM

Cellphone exchanged text messages with the QUADRI Cellphone-1 throughout the duration of the charged fraudulent scheme. In those text messages, the QUADRI Cellphone-1 texted personal information, including the account and routing numbers for a bank account at Bank of America, which, based on information from Early Warning Services (Zelle), I know belongs to QUADRI SALAHUDDIN, the defendant.

   iii. Based on information from T-Mobile, I know that from on or about May 12, 2020 through on or about September 16, 2020, the QUADRI Cellphone-1 had approximately 140 calls with the CARTER Cellphone, and from on or about May 20, 2020 through on or about September 16, 2020, the QUADRI Cellphone-1 had approximately 65 calls with the RANSOM Cellphone.

   d. QUADRI SALAHUDDIN, the defendant, is the subscriber of a cellphone with telephone number ending in 4612 (the "QUADRI Cellphone-2").

## INITIAL APPLICATIONS THROUGH JACOB CARTER

  27. Based on information from Facebook, Inc. ("Facebook"), I know that a Facebook account registered to ANWAR SALAHUDDIN, the defendant, (the "ANWAR Facebook Account") exchanged messages with a Facebook account associated with QUADRI SALAHUDDIN, the defendant, (the "QUADRI Facebook Account")[2] throughout the duration of the fraudulent scheme, wherein the ANWAR Facebook Account and the QUADRI Facebook Account discussed details of the scheme.

  28. For example, based on information from Facebook, I know that on or about May 14, 2020, the ANWAR Facebook Account messaged the QUADRI Facebook account, in sum and substance, to call "jacob," provided the phone number for the CARTER Cellphone, and said that Jacob would "explain it." Thereafter, the QUADRI Facebook Account messaged the ANWAR Facebook Account "we did my shit," and confirmed that he was told about the breakdown.

  29. Based on information from T-Mobile, I know that on or about May 14, 2020, the QUADRI Cellphone-2 called the CARTER Cellphone.

---

[2] I know the QUADRI Facebook Account is associated with QUADRI SALAHUDDIN, the defendant, based on my comparison of the profile photographs from the QUADRI Facebook Account with a DMV photograph for QUADRI SALAHUDDIN, the defendant.

30.   Based on information from the SBA, I know that on or about May 14, 2020, an EIDL application was submitted in the name of QUADRI SALAHUDDIN, the defendant, which claimed that QUADRI SALAHUDDIN owned a business with 11 employees, and $63,000 in gross revenues and $19,000 in cost of goods for the prior 12 months.

31.   Based on information from Facebook, I know that on or about May 15, 2020:

    a.   The the ANWAR Facebook Account sent the QUADRI Facebook Account a recorded voice message stating, in substance and in part, that QUADRI SALAHUDDIN, the defendant, should check his bank account.

    b.   Thereafter, the QUADRI Facebook Account sent the ANWAR Facebook Account a photograph of a $10,000 deposit into QUADRI SALAHUDDIN's bank account.  The QUADRI Facebook Account then asked "How much Jacob want?" and the ANWAR Facebook Account responded "4 . . . You got 5 for ya self."  The QUADRI Facebook Account stated that he "can fix the car and invest some money into the market!"

    c.   That same day, the QUADRI Facebook Account told the ANWAR Facebook Account, "Gonna try to get other people so I can get PC too lol,"[3] And "I'm gonna get like a solid 20 people in a day 😂😂😂," to which the ANWAR Facebook Account replied, "20 bands."[4]

## ANWAR SALAHUDDIN AND QUADRI SALAHUDDIN RECRUIT APPLICANTS

32.   Based on information from Facebook, I know that the ANWAR Facebook Account exchanged messages with numerous accounts regarding SBA EIDL applications, including messages with "Applicant-1's" Facebook Account.

33.   For example, on or about May 22, 2020, the ANWAR Facebook Account and Applicant-1's Facebook Account exchanged the following messages:

**ANWAR:**        Tryna make 6k

---

[3] Based on my participation in this investigation, I know that "PC" refers to a percentage.

[4] Based on my participation in this investigation, I know that "band" refers to $1,000.

**ANWAR:**          ?

**Applicant-1:**   What you think?

**ANWAR:**          Aight.. you gonna get 10k in ya account . .
                   just gotta PC me 1k and my boy 3K . .  No scam
                   shit

**ANWAR:**          Some covid 19 relief joint my boy got privy to

                            *      *      *

**Applicant-1:**   So what do you need from me?

                            *      *      *

**ANWAR:**          First and Last name: DOB: Full address: Email:
                   Phone number: Bank name, account number and
                   routing number: Social:

**ANWAR:**          Depending on your bank it clears within 24 hrs

**ANWAR:**          After he enters the info . . . he sends me a
                   screenshot [of] it and I'll send it to you

**ANWAR:**          Looks like this

[screenshot of a confirmation from the SBA for a submitted EIDL
application.]

                            *      *      *

**Applicant-1:**   [Name, date of birth, address, email address,
                   phone number and banking information]

34.   The ANWAR Facebook Account then sent the Applicant-1
Facebook Account a screenshot of a text message conversation
with the CARTER Cellphone, which included all of the personal
information that Applicant-1 had provided the ANWAR Facebook
Account.

35.   Applicant-1's Facebook Account then asked the Anwar
Facebook Account "What's your boy name and shit who is doing
this," and the ANWAR Facebook Account replied, in sum and
substance, JACOB CARTER, the defendant.

36.   On or about May 28, 2020, the ANWAR Facebook Account messaged the Applicant-1 Facebook Account a screenshot of SBA's confirmation of a submitted EIDL application.

37.   Based on information from the SBA, I know that on or about May 28, 2020, an EIDL application was submitted for Applicant-1, which claimed that he/she owned a business with 14 employees, and with $67,000 in gross revenues and $22,000 cost of goods in the prior 12 months.  In addition, the application was submitted by one of the CARTER IP Addresses and the application number matched the number from the screenshot that the ANWAR Facebook Account sent the Applicant-1 Facebook Account.

## ANWAR SALAHUDDIN AND QUADRI SALAHUDDIN COMPLETE APPLICATIONS

38.   Based on information from Facebook, I know that on or about June 8, 2020, the ANWAR Facebook Account messaged two other Facebook users that "Quadri know how to do it now," and in one instance explained, "My boy taught him."

39.   Based on information from the SBA, I know that on or about June 9, 2020, the ANWAR SALAHUDDIN IP Addresses began submitting EIDL applications to the SBA.

40.   Based on information from Facebook, I know that on or about June 16, 2020, the ANWAR Facebook Account and QUADRI Facebook Account, discussed, in sum and substance, names of applicants that ANWAR SALAHUDDIN, the defendant, had submitted to the SBA.  On or about June 18, 2020, the QUADRI Facebook Account messaged the ANWAR Facebook Account, "I give Jacob is 1k and I take my 1.5k and you keep the other 1.5k."

41.   Based on information from Facebook, I know that from on or about June 21, 2020 to June 23, 2020, the ANWAR Facebook Account and Applicant-2 Facebook Account exchanged the following messages:

**ANWAR:**       [Screenshot of SBA's website explaining the EIDL advance, with a circle drawn around "This loan advance will not have to be repaid."]

**Applicant-2:**   wow

*       *       *

**ANWAR:**      Full Name: Email: Phone: Address (city, state,
               zip) Bank name: (Electronic)Routing #: (Checking)
               Account #: Social: DOB:

**ANWAR:**      That's the format

               I'm doing them now

**Applicant-2:**  ok so once I send that info then whats next?

**Applicant-2:**  👀

**ANWAR:**      I fill it out then send you the confirmation
               message

                       *       *       *

**Applicant-2:**  [Name, address, banking information, dob, social
               security number]

                       *       *       *

**ANWAR:**      I'll do it now

               16 people so far

                       *       *       *

**ANWAR:**      [Screenshot of SBA confirmation of EIDL
               application submission]

                       *       *       *

**Applicant-2:**  ok sent 2400 because I sent other money this week
               and 600 when you pull up on me

    42.  Based on information from CashApp, I know that on or
about June 23, 2020, Applicant-2 sent ANWAR SALAHUDDIN, the
defendant, $2,400.

## QUADRI SALAHUDDIN AND CHRISTAL RANSOM

### A. Applicant-3 and Applicant-4

    43.  Based on text messages of the RANSOM Cellphone and QUADRI
Cellphone-1 obtained from Apple, I know that the RANSOM Cellphone
and QUADRI Cellphone-1 exchanged text messages throughout the

13

duration of the fraudulent scheme, wherein the RANSOM Cellphone sent the QUADRI Cellphone-1 applicants' personal information, which did not include any business information.   Thereafter, the RANSOM Cellphone and QUADRI Cellphone-1 discussed the status of the applications, whether the applicant had received money from the SBA, when and how the applicant would pay their kickback to CHRISTAL RANSOM, the defendant, and how the kickback would be split between RANSOM and QUADRI SALAHUDDIN, the defendant.

44.   For example, based on the text messages of the RANSOM Cellphone and QUADRI Cellphone-1 that I obtained from Apple, I know that:

a.   On or about May 20, 2020, the QUADRI Cellphone-1 texted the RANSOM Cellphone, "Bank name:   Email:   Routing #: Account #:   DOB:   SSN:   Full Address:   Full Name."

b.   On or about May 22, 2020:

i.   The RANSOM Cellphone texted the QUADRI Cellphone-1, "New Person," along with a bank name, email, routing number, account number, date of birth, social security, address, and name of an individual ("Applicant-3").

ii.   The QUADRI Cellphone-1 texted, "Alright cool!" and "Whenever you get the chance however you want to do the payment either through cash app or Zelle.   However you want. Just send through 4."   The RANSOM Cellphone asked if "at any point can they reverse this deposit," and the QUADRI Cellphone-1 responded "Nope! It never happened before."

iii. The RANSOM Cellphone texted "I'm sure I'll be sending you more peeps" and said that she was going to use Zelle to transfer the money.   Thereafter, the QUADRI Cellphone-1 texted "Okay I just got it !!!"

45.   Based on information from Bank of America, I know that on or about May 27, 2020, RANSOM's bank account at Bank of America transferred $4,000 to "QUADRI" through Zelle.

46.   Based on my review of text messages obtained from Apple, I know that:

a.   On or about May 29, 2020, the RANSOM Cellphone texted a phone number ending in 5752 ("Applicant-4 Cellphone"), including:

**RANSOM Cellphone:**      Bank name:  Email:  Routing #:  Account# DOB:  SSN:  Full Address:  Full Name: Phone#

Make sure you include you[r] full address with Zip

**Applicant-4 Cellphone:**      [Bank, email, account numbers, date of birth, social security number, address, name, and phone number]

**RANSOM Cellphone:**      Liked [the prior message]

Sending now

                              *         *         *

**RANSOM Cellphone:**      But all in all .. . the 5K needs to be sent over the same day they get the deposit

     b.  On or about May 29, 2020, within seconds of receiving Applicant-4's personal identification information, the RANSOM Cellphone texted the QUADRI Cellphone-1:

**RANSOM Cellphone:**      New new!

[Applicant-4's personal information, including date of birth, address, social security number and banking information]

**QUADRI Cellphone-1:**      Liked [RANSOM Cellphone's prior text message]

**RANSOM Cellphone:**      You are about to get like 5 more before the day is up

I know too many people

**QUADRI Cellphone-1:**      Laughed at "I know too many people"

It's alright the more the better!

Liked "You are about to get like 5 more before the day is up"

**RANSOM Cellphone:**      Loved "It's alright the more the better!"

**QUADRI Cellphone-1:**      So bring it on!

     c.   On or about June 9, 2020, the Applicant-4 Cellphone and RANSOM Cellphone exchanged text messages, including:

**Applicant-4 Cellphone:**   Do you have zelle

**RANSOM Cellphone:**   Liked [Applicant-4 Cellphone's prior message]

    Did it come?

**Applicant-4 Cellphone:**   Yes

    Do you have zelle

**RANSOM Cellphone:**   Yes I do

47.   Based on information from Bank of America, I know that on or about June 9, 2020, RANSOM's bank account with Bank of America received a $2,000 deposit through Zelle from "[Applicant-4]."

48.   Based on information from Apple, I know that on or about June 9, 2020, the Applicant-4 Cellphone and RANSOM Cellphone exchanged text messages, including:

**Applicant-4 Cellphone:**   I'm going to have [Individual-1] send you 1000 and [Individual-2] send you 2

**RANSOM Cellphone:**   Loved [Applicant-4 Cellphone prior message]

    What time can expect the rest of the deposit?

**Applicant-4 Cellphone:**   Right now

**RANSOM Cellphone:**   I just got the 2k

**Applicant-4 Cellphone:**   One from [Individual-2]

49.   Based on information from Bank of America, I know that on or about June 9, 2020, RANSOM's bank account with Bank of America:

     a.   Received a $2,000 deposit through Zelle from [Individual-2].

     b.   Sent $4,000 through Zelle to "QUADRI."

50.   Based on information from Apple, I know that on or about June 10, 2020, the RANSOM Cellphone and QUADRI Cellphone-1 exchanged the following text messages:

| | |
|---|---|
| **QUADRI Cellphone-1:** | Got one payment.  That's for who? |
| **RANSOM Cellphone:** | Just sent you over 4 for [Applicant-4, with last name misspelled] |
| | [corrected spelling of Applicant-4's last name] |
| **QUADRI Cellphone-1:** | Okay got it |

51.  Based on information from Bank of America and Square/Cash App, I know that on or about June 10, 2020, CHRISTAL RANSOM, the defendant, received a $300 deposit from Individual-1, and three deposits from Applicant-4, totaling $736.

### B. Large Volume of Applications

52.  Based on my review of text messages obtained from Apple, I know that CHRISTAL RANSOM, the defendant, provided QUADRI SALAHUDDIN, the defendant, the personal information for approximately 63 applicants and the two discussed the significant volume RANSOM was providing.  For example, on or about May 28, 2020, the QUADRI Cellphone-1 texted the RANSOM Cellphone, stating in part that, "you still got like 40 other people," and the RANSOM Cellphone texted, in part, "I have people all day."

### C. Discussions Regarding Splitting Kickbacks

53.  Based on my review of the text messages from Apple, I know that the RANSOM Cellphone and QUADRI Cellphone-1 exchanged numerous text messages about collecting money from applicants who received the $10,000 grant from the SBA, and how to divide that amount amongst themselves.

a.   On or about June 14, 2020:

| | |
|---|---|
| **RANSOM Cellphone:** | About to send you 3 for [Applicant-5] |
| | [Corrected spelling for Applicant-5] |
| **QUADRI Cellphone-1:** | For this one just give me 2.5 |
| | Keep the extra 500 |
| **RANSOM Cellphone:** | Your amazing |

Thank you my love

     b.   On or about June 16, 2020:

**QUADRI Cellphone-1:**      So for the next one that hits give me 1500 only and you can keep the other 1500 out of my 3

54. Eventually, CHRISTAL RANSOM, the defendant, started splitting the kickback evenly with QUADRI SALAHUDDIN, the defendant. For example, based on text messages obtained from Apple, I know that on or about June 30, 2020, the QUADRI Cellphone-1 texted the RANSOM Cellphone, "For these next people that I do everything is going to be 2 and 2 from now on? *!!! You have officially financially graduated." The RANSOM Cellphone replied "Thank you God." And further stated "I've been working hard boss."

55. Based on information from Bank of America, and CashApp, I know that from on or about May 22, 2020 to on or about July 9, 2020, CHRISTAL RANSOM, the defendant, sent QUADRI SALAHUDDIN, the defendant, approximately $99,000, including 28 Zelle transfers of a combined $69,000, 5 CashApp transfers of a combined $4,000, 10 online banking transfers for a total of $25,000, and 1 Venmo transfer for $1,000.

**D. Discussions Regarding Types of Businesses**

56. Based on my review of the text messages from Apple, I know that the RANSOM Cellphone and QUADRI Cellphone-1 exchanged text messages, wherein the QUADRI Cellphone-1 texted the RANSOM Cellphone, that he was "gonna switch it up too just to let you know. I'm gonna try entertainment this time and see if they hit." In response, the RANSOM Cellphone expressed concern about "switch[ing] up the game in the 9th ending," and asked if "there [was] a chance by doing that . . . that it possibly [may] not hit?"

57. Based on my involvement in this investigation, I know that the QUADRI Cellphone-1 and RANSOM Cellphone were discussing what industry category QUADRI SALAHUDDIN, the defendant, would identify in the EIDL applications he was submitting or causing to be submitted. Based on information from the SBA, I know that approximately 95% of the fraudulent EIDL Applications that the defendants submitted prior to June 20, 2020 claimed that the business was involved in the agricultural sector.

**E. Discussions Regarding Banks Raising Concerns**

58.   Based on my review of the text messages from Apple, I know that the RANSOM Cellphone and QUADRI Cellphone-1 exchanged text messages discussing concerns about banks questioning the large amount of cash transfers they were doing in connection with the scheme.

a.   For example, on or about May 29, 2020, the RANSOM Cellphone texted the QUADRI Cellphone-1, "Do you think it's good for us to transfer between our accounts for so much.  We're going to be doing a lot of this.  Just making sure that's not a red flag."  The QUADRI Cellphone-1 replied "Yes I know I may have to open up a business account if anything.  But worth it."

b.   On or about June 5, 2020, the QUADRI Cellphone-1 texted the RANSOM Cellphone, "Just an update. I'm going to start requesting. Everyone to MoneyGram me the money from now on.  So banks won't keep track of me or any of us and what we are doing. It's better that way and less suspicious!"  The RANSOM Cellphone replied "I agree."

c.   On or about June 24, 2020, the QUADRI Cellphone-1 and RANSOM Cellphone exchanged the following text messages:

| | |
|---|---|
| **QUADRI Cellphone-1:** | But they [banks] on high security alerts because of this |
| | https://www.marketwatch.com/story/small-business-owners-could-face-jail-time-as-doj-launches-investigation-into-coronavirus-loan-program-2020-05-01 |
| | So the banks have been on it now |
| **RANSOM Cellphone:** | Wooow |
| | Hum |
| | So this is the new hurdle |
| | So is this going to come back on us at any point |
| **QUADRI Cellphone-1:** | No not at all |
| **RANSOM Cellphone:** | Wheeeew |
| **QUADRI Cellphone-1:** | When I saw it I laughed |

|  | Because my brother sent it to me [Emoticon: loudly crying face] |
|---|---|
| **RANSOM Cellphone:** | Laughed at "Because my brother sent it to me [Emoticon: loudly crying face]" |
| **QUADRI Cellphone-1:** | Because if you really read it they are talking about the PPP loan |
| **RANSOM Cellphone:** | Emphasized "Because if you really read it they are talking about the PPP loan" |
|  | People getting to the bag |
| **QUADRI Cellphone-1:** | We are the IEDL [*sic*] advance |
|  | So that has nothing to do wit it |
| **RANSOM Cellphone:** | Loved "We are the IEDL [*sic*] advance" |
|  | Thank god your smart |

WHEREFORE, deponent respectfully requests that warrants be issued for the arrest of JACOB CARTER, QUADRI SALAHUDDIN, ANWAR SALAHUDDIN, AND CHRISTAL RANSOM, the defendants, and that each be imprisoned or bailed, as the case may be.

/s/ Lawrence Lonergan (credentials inspected)(via FaceTime)
Special Agent Lawrence Lonergan
Federal Bureau of Investigation

Sworn to through the transmission of this
Affidavit by reliable electronic means, pursuant to
Federal Rules of Criminal Procedures 41(d)(3) and 4.1,
this _11_ day of October, 2021

THE HONORABLE PAUL E. DAVISON
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK